

**VIA ECF**
Hon. Judge Alex Tse
San Francisco Courthouse
Courtroom A – 15th Floor
450 Golden Gate Avenue
San Francisco, California 94102

      Re:    *Bagatelos, et al, v. Umpqua Bank*, Case No. 3:23-cv-2759-RS

Dear Judge Tse,

The parties submit this joint letter regarding eight third-party document subpoenas that Umpqua recently served. The parties met and conferred by e-mail and videoconference in a good faith attempt to resolve this dispute but were unsuccessful.

**Plaintiffs' Position**

This dispute concerns agreed discovery limitations in a consolidated matter involving a 3.5-year-old class action (*Camenisch, et al. v. Umpqua Bank*, Case No. 3:20-cv-5905-RS) and a 6-month-old non-class case (*Bagatelos, et al. v. Umpqua Bank,* Case No. 3:23-cv-2759-RS). At the Court's behest, earlier this year, the parties agreed to conduct only limited, specific discovery in *Bagatelos* to avoid delay and prejudice to the *Camenisch* class, while permitting the consolidated trial Umpqua sought for both actions. Umpqua now reneges on the agreement it represented to the Court as a basis for granting consolidation and seeks extensive discovery beyond its scope. Plaintiffs respectfully ask the Court to enforce the discovery limitations and issue a protective order precluding Umpqua from enforcing its December 8, 2023 third-party document subpoenas or using documents received in response to those subpoenas.

Yesterday, in response to an administrative motion that Umpqua filed about this dispute, Judge Seeborg noted that he set these two matters to be tried jointly after the parties reached agreement on the scope of any new discovery. "Noting that agreement, the case management order did not otherwise set out any specific limitations on discovery." (*Bagatelos*, Dkt. 203 at 1.) That said, Judge Seeborg concluded that whether any discovery falls within those limitations is "within the scope of the referral to the magistrate judge. (*Id.* at 2.)

*Procedural Background and Limited Discovery Agreement*

After extensive fact discovery was completed, a 1,250 class was certified, and Umpqua's summary judgment motion was denied in *Camenisch*, eleven Ponzi scheme victims whose tenancy-in-common investments were excluded from the class filed the *Bagatelos* action. Given the virtually identical nature of the cases, Plaintiffs moved to relate the actions (*Camenisch*, Dkt. 186), and Umpqua moved to consolidate them for all purposes (*Camenisch*, Dkt. 192). Plaintiffs intended to oppose consolidation, primarily to avoid any prejudice to the *Camenisch* class from delay that could result as the new *Bagatelos* action caught up with *Camenisch*. The parties

discussed this concern before Umpqua moved for consolidation, and Umpqua addressed it directly in its motion, stating "[t]o amelioarate the potential for delay and streamline the proceedings, Umpqua . . . would agree to forego . . . lengthy discovery while preserving its right to limited discovery." (*Camenisch*, Dkt. 192 at 3.) Umpqua made the same representation in a concurrently filed Joint Case Management Statement. (*Camenisch*, Dkt. 191 at 5.)

The Court promptly ordered the parties to renew their negotiations "to determine if they can agree to conditions and timing under which the two cases can be resolved in a single trial. Although the desire of plaintiffs to avoid the additional delay that might result is understandable, it appears defendant is willing to agree to abbreviated procedures such that the delay would be less than five months. . . . [I]t may be the parties can reach an agreement that balances all of the competing interests." (*Camenisch*, Dkt. 193.)

The parties did reach such an agreement and memorialized it in their next Joint Case Management Statement, as the Court instructed. (*See Camenisch*, Dkt. 193 at 2.) The parties agreed that if the cases were consolidated, Umpqua would be permitted to take discovery of only Plaintiffs themselves, and that discovery would be limited to 5-10 document requests, 2-hour depositions, and interrogatories, if needed, to identify Plaintiffs' investments and distributions. (*Bagatelos*, Dkt. 35.) Plaintiffs were not limited to discovery on Umpqua, but were limited to 5 depositions of new witnesses, 15 interrogatories, 5-10 document requests, and requests for admission. (*Id.*)

Given the parties agreement, the Court promptly issued an order setting the cases for a consolidated trial to begin in September 2024. (*See Bagatelos*, Dkt. 39 ("In their Joint Case Management Conference Statements filed in these two related cases, the parties report they have reached agreement for the cases to be tried together in a consolidated trial in September of next year.").)

*Umpqua's Third-Party Document Subpoenas*

On December 8, Umpqua served Plaintiffs with notice of eight document subpoenas to third-parties.[1] The discovery includes 7 requests to Michael Goldberg, the trustee of the PFI Trust (the current iteration of the investment company that perpetrated the Ponzi scheme) (Ex. 1), 7 requests to PFI (the defunct investment company) (Ex. 2), 4 requests to Charlene Albanese (the ex-wife of PFI's owner) (Ex. 3), 5 to Edward Swanson (legal counsel for another PFI principal in his criminal prosecution) (Ex. 4), and 9 requests to each of 4 banks that provided loans on properties subject to the *Bagatelos* Plaintiffs' tenancy-in-common investments (Exs. 5 - 8).

All of these subpoenas are improper because they are directed at entities and individuals who are not plaintiffs in the *Bagatelos* action, as contemplated by the parties' agreement and the Court's consolidation order. (*Bagatelos*, Dkt. 35 and Dkt. 39.) To be clear, Plaintiffs do not contend that the parties' agreement forbids any third-party discovery; rather, the agreement specifically limited Umpqua to discovery on the *Bagatelos* Plaintiffs. Permitting Umpqua's

---

[1] Umpqua also served notices of two third-party deposition subpoenas. At Plaintiffs' objection, Umpqua agreed these would exceed the 10 depositions permitted by Fed. R. Civ. P. 30 without Court order. The parties submitted a separate discovery letter about those two depositions. (*Bagatelos*, Dkt. 47.)

discovery to proceed despite the parties' agreed limitations would undermine judicial efficiency, which favors cooperative resolution of discovery and procedural disputes by parties.

The subpoenas also fail to allow a reasonable time for compliance, as required by Rule 45(d)(3)(A)(i), having been served just 21 days or less before the December 29, 2023 close of fact discovery and in the midst of Hanukkah and Christmas business closures. It is unreasonable to ask third parties to search for, collect, and produce documents by the commanded due dates of December 22, December 26, and December 28, or even by December 29, 2023, and, per the Parties' August 3, 2023, Joint Case Management Statement, a party may not by fiat extend the Court-ordered discovery deadline. (*Bagatelos*, Dkt. 25 at 6.)

The subpoenas are also overly broad and seek old, irrelevant information. The requests seek extensive information from individuals and about topics that Umpqua has known about for years – including when discovery was open in *Camenisch*. For example, Umpqua now wants documents from the ex-wife of Ken Casey (a principal in the at-issue Ponzi scheme), and from a lawyer who represents Lewis Wallach (another PFI principal) about a letter filed in Mr. Wallach's criminal case over two years ago. Umpqua knew of these individuals and topics when it proposed and then agreed to its discovery limitations in *Bagatelos*. It could have asked for such discovery during the parties' negotiations, but did not, and could have raised the requests much earlier in the four-month *Bagatelos* discovery period, so that the dispute could have been resolved one way or another in a timely fashion and without endangering the consolidated trial date. Seeking these documents at this late date suggests an improper purpose.

**Defendant's Position**

The thrust of Plaintiffs' contention that Umpqua is not entitled to issue document subpoenas to third parties is that Judge Seeborg's Case Management Order (Dkt. 39) prevents Umpqua (but not Plaintiffs) from issuing document subpoenas. That contention is wholly without merit.

Although Judge Seeborg declined to rule on Umpqua's request for clarification of the Case Management Order and instead referred the matter to Your Honor as a discovery dispute, Judge Seeborg correctly noted that "[i]n the ordinary course, discovery limitations set in case management orders do not address third party discovery." (Dkt. 48.) That is correct and why Plaintiffs' argument fails—particularly when read in the context the parties' case management dialog.

Plaintiffs' secondary arguments regarding the compliance date, relevance, and scope of the subpoenas, similarly lack merit as it is black-letter law a *party* lacks standing to challenge a subpoena to a *non-party* on such grounds. The fact that Plaintiffs have interposed such meritless and conclusory arguments reinforces how this exercise is merely an improper attempt by Plaintiffs to prevent Umpqua from obtaining documents that will harm Plaintiffs' case.

*The Case Management Order Does Not Prevent The Parties From Issuing Third-Party Subpoenas*

As Judge Seeborg recognized, "[i]n the ordinary course, discovery limitations set in case

management orders do not address third party discovery." (Dkt. 48.) Nothing about this case deviates from that ordinary course as neither the parties' Joint Initial Case Management Statement (Dkt. 35), nor Case Management Order (Dkt. 39), limit third-party discovery. In fact, they say nothing about third-party discovery at all. In full, those documents described the parties' anticipated discovery as follows:

Umpqua:

- Between 5-10 Requests for Production to the *Bagatelos* Plaintiffs, seeking information about their PFI investments and dealings with PFI;
- Depositions of no more than 2 hours of each *Bagatelos* Plaintiff; and
- If necessary, Interrogatories to the *Bagatelos* Plaintiffs seeking the identification of PFI investments and distributions from PFI.

Plaintiffs:

- Five depositions of witnesses not yet deposed in *Camenisch*;
- 15 interrogatories;
- 5-10 Requests for Production if needed following depositions;
- Requests for Admission.

(Dkt. 35 at 5.)

As Plaintiffs concede, they have issued multiple third-party subpoenas. Among other things, Plaintiffs have subpoenaed PFI (one of the third parties Umpqua now seeks to subpoena), Kim Kaselionis (the former CEO of Circle Bank), and GlobalVision (the developer of the "Patriot Officer" software Umpqua previously utilized) seeking various documents and electronically stored information. The fact that Plaintiffs have themselves issued multiple subpoenas demonstrates that the Case Management Order does not prohibit the parties from subpoenaing third parties. After all, actions speak louder than words and if Plaintiffs truly believed the Case Management Order prohibited third-party discovery, they would not have issued their subpoenas without obtaining leave of court.

When Umpqua pointed out this internal inconsistency and explained how Plaintiffs' argument was "contrary to [their] own actions" [Ex. 9], Plaintiffs invented the new, misguided argument that they now present to Your Honor. Under this new argument, Plaintiffs maintain that the statement that Plaintiffs would issue "5-10 Requests for Production" means Plaintiffs are entitled to issue document subpoenas (while Umpqua is not) so long as the combined total of Plaintiffs' Requests for Production to Umpqua and document subpoenas are less than 10.

This is a meritless construct. Definitionally, and under the Federal Rules of Civil Procedure, "requests for production" are not the same as "document subpoenas." *Compare* Fed. R. Civ. P. 34 (governing requests for production), *with* Fed. R. Civ. P. 45 (governing document subpoenas). On their face, the two are different, governed by different rules, and subject to different procedures. *See id.* This alone is reason to reject Plaintiffs' meritless interpretation of the Case Management Order, which is only being interposed to be obstructionist.

Beyond that, Plaintiffs ignore the limiting language that Plaintiffs themselves wrote when describing this category of discovery requests and how Plaintiffs stated document requests would only be issued "***if needed following depositions***." (Dkt. 35 at 5 [emphasis added].) Indisputably, this does not describe Plaintiffs' document subpoenas which were decidedly not issued "***following depositions***" or "***if needed***." Rather, they were the very first discovery that Plaintiffs propounded—before depositions took place.

<u>*Plaintiffs Lack Standing To Assert Their Remaining Objections; Which Are Meritless*</u>

Plaintiffs' final two paragraphs argue that the third-party subpoenas issued by Umpqua are also improper because they do not allow sufficient time for compliance, seek irrelevant material, are overly broad, and seek privileged materials. Although the precise bases for these conclusory assertions is unclear (because Plaintiffs did not raise these arguments during the parties' meet and confer discussions), these arguments can be summarily rejected.

As Your Honor has previously ruled, it is black-letter law that a *party* lacks standing to assert such objections to a *third-party* subpoena—rather, such objections belong only to the subpoenaed third-party.[2] *See Pfaff v. Merck & Co.*, 2020 U.S. Dist. LEXIS 178409, *4-5 (N.D. Cal. Sep. 28, 2020) ("The subpoena is directed to Trace3 not to the plaintiffs, and the plaintiffs can't make an undue-burden argument on Trace3's behalf."). That is because "a party has no standing to seek to quash a subpoena issued to someone who is not a party to the action, unless the objecting party claims some personal right or privilege with regard to the documents sought." *In re Rule 45 Subpoenas Issued to Google LLC & Linkedin Corp. dated July 23, 2020*, 337 F.R.D. 639, 645 (N.D. Cal. 2020).

Given Plaintiffs have made no attempt whatsoever to explain how they have some potential right or privilege with respect to the documents sought, or how subpoenas to *third parties* would be incongruent with the principles of Rule 26(b)(2) given that they impose no further burden or cost on Plaintiffs and the clear relevance of the requested materials, these arguments can (and should) be summarily rejected. Moreover, the fact that Plaintiffs are interposing them at all—when they are so plainly legally erroneous—reinforces that this exercise is a construct, intended only to try and prevent Umpqua from taking discovery that will harm Plaintiffs' case. This is not a legitimate basis to oppose discovery.

*/s/ Linda P. Lam*
Counsel for Plaintiffs

*/s/ Kasey Curtis*
Counsel for Defendant

---

[2] While it is not Plaintiffs objection to raise, the subpoenas provide more than sufficient time to comply. It is recognized that "[s]ervice of subpoenas at least 10 days before the deposition or production is customary, but not mandatory." *Universal Church, Inc. v. Standard Constr. Co. of S.F., Inc.*, 2015 U.S. Dist. LEXIS 143382, *8 (N.D. Cal. Oct. 21, 2015).